UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RHONDA C HEBERT                         CASE NO.  6:23-CV-00231

VERSUS                                  JUDGE TERRY A. DOUGHTY

EXPEDITORS & PRODUCTION                 MAGISTRATE JUDGE DAVID J. AYO
SERVICES CO INC ET AL


MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 27] filed by Plaintiff, Rhonda Hebert ("Hebert" or "Plaintiff"). Defendant, EPS Medical Solutions, LLC, ("EPS") filed an Opposition and Cross-Motion for Summary Judgment [Doc. No. 39]. Defendant, Hornbeck Offshore Services, LLC ("Hornbeck"), filed an Opposition to Plaintiff's Motion for Summary Judgment [Doc. No. 41].  Plaintiff filed an Opposition to the Cross-Motion for Summary Judgment [Doc. No. 52]. No replies have been filed.

For the reasons set forth herein, the Motion for Summary Judgment filed by Plaintiff is **DENIED**. The Cross-Motion for Summary Judgment filed by EPS is **GRANTED**.

I.    **FACTS AND PROCEDURAL BACKGROUND**

This case arises from an incident on or around February 22, 2023, where Plaintiff allegedly sustained personal injuries while employed as a medic aboard *M/V HOS Warland* ("the vessel"), which was owned and operated by Hornbeck.[1]

Plaintiff's career began around 1992 when she was hired to be an ambulance driver after completing EMT basic training.[2] Plaintiff eventually went to work as a classroom instructor for

---

[1] [Doc. No. 27-6].
[2] [Doc. No. 39-3, p. 6].

Occupational Safety Training and then as a paramedic on land during the BP oil spill until she was laid off in February 2011.[3] After being laid off, Plaintiff was hired to work three hitches as a paramedic aboard a semi-submersible drill ship.[4] Plaintiff's other jobs include working as an HSE trainer where she taught OSHA maritime courses and as an offshore medic on ships for Pharma-Safe Industrial Services.[5] Plaintiff worked for EPS for a total of eight months with three hitches on the vessel.[6] Plaintiff began working on the vessel on or about January 16, 2022[7] after being hired by Frank Stoltz ("Stoltz"), EPS's hiring manager.[8] Initially, however, Plaintiff was hired as a COVID tech to do land based COVID testing.[9]  Besides the minimal training requirement all employees receive when going offshore, Stoltz stated that EPS did not provide Hebert with additional training, as she knew more about working offshore than anyone.[10] Further, Hebert testified that Hornbeck did give advice about how to "walk around the vessel, be safe, look out for hazards, [and] general safety training" and that she considered the vessel to be a safe environment.[11]

At approximately 5:30 a.m. on February 23, 2022, Plaintiff was in the shower with the exterior door to the infirmary locked.[12] Somebody was "incessantly" rattling the door handle, so Hebert assumed someone had gotten hurt and needed her services.[13] When she stepped out of the shower, her ankle rolled and she fell, hitting her shin on the toilet.[14] However, Hebert testified that

---

[3] [Doc. No. 39-3, p. 9; Doc. No. 39-4, p. 2].
[4] [Doc. No. 39-3, p. 14].
[5] [Id. at p. 17].
[6] [Doc. No. 27-5, p. 3].
[7] [Doc. No. 27-4, p. 49].
[8] [Id. at p. 2].
[9] [Id. at p. 11].
[10] [Doc. No. 39-5, p. 6-10].
[11] [Doc. No. 39-3, p. 30].
[12] [Doc. No. 27-5, p. 4].
[13] [Id.]
[14] [Id. at p. 5].

she was not rushing to get out of the shower.[15] Hebert testified that there was no water on the floor and agreed that "there was nothing on the floor that caused [her] ankle to roll."[16] Further, Hebert testified that nothing in the shower caused the fall.[17] Hebert began walking around to see what was going on and immediately notified her manager after the incident.[18] As it turns out, there was no emergency and the man that rattled the door handle needed to ask a question about maritime laws.[19] Hebert finished out the remainder of her hitch and testified that she never asked to move out of the infirmary.[20] Despite never asking to relocate, Hebert testified that "[she] was just much more careful and [she] decided that if [she] was in the shower again and somebody was rattling the door, [she] was not going to do what [she] did."[21]

On February 22, 2023, Hebert filed this suit in federal court against EPS, as her Jones Act employer, and Hornbeck, as vessel operator, on the basis of federal question pursuant to the Jones Act.[22]

On March 25, 2024, Plaintiff filed a Motion for Summary Judgment asking the Court to hold that 1) Hebert is not comparatively at fault for the accident because it was caused by a sudden emergency and 2) EPS bears a minimum of 1% fault for its failure to train.[23] EPS filed an Opposition and Cross-Motion for Summary Judgment urging the Court to dismiss Hebert's cause of action against EPS for negligence under the Jones Act.[24] Plaintiff filed an Opposition to EPS' Cross-Motion for Summary Judgment. Hornbeck filed an Opposition to Plaintiff's Motion for

---

[15] [Doc. No. 39-3, p. 46].
[16] [Id.]
[17] [Doc. No. 39-3, p. 47].
[18] [Doc. No. 27-5, p. 5; Doc. No 39-3, p. 49].
[19] [Doc. No. 27-5, p. 5].
[20] [Doc. No. 39-3, p. 51].
[21] [Id. at p. 52].
[22] [Doc. No. 1].
[23] [Doc. No. 27-1, p. 3].
[24] [Doc. No. 39-1].

Summary Judgment stating that "a reasonable jury could find or infer that: (1) Plaintiff caused/contributed to her alleged accident, (2) Plaintiff's response was unjustified, or (3) the circumstances preceding the alleged accident did not rise to a sudden emergency."[25]

The issues have been briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### a.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

---

[25] [Doc. No. 41, p. 3].

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### b.  Negligence of EPS

For clarity and structure of this ruling, the Court will first address whether EPS was negligent under the Jones Act. An employer is liable under the Jones Act if the negligence of its employees or agents played even a small role in causing the injury or death for which damages are sought. *Gautreaux v. Scurlock Marine, Inc*., 107 F.3d 331, 335 (5th Cir. 1997). However, the employer's standard of care is not greater than that of ordinary negligence. *Sanders v. Diamond*

*Offshore Drilling, Inc.*, 2002 WL 31654973 (E.D. La. Nov. 21, 2002). "A seaman, then, is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education." *Gautreaux*, 107 F.3d at 339.

Contributory negligence on the part of the seaman does not bar recovery, but serves to reduce the seaman's damages in proportion to the degree of negligence, thus to defeat a Jones Act claim by way of summary judgment, an employer "must show that there is no genuine issue of material fact with respect to its own negligence." *Thibodeaux v. Gulf Coast Tugs, Inc*., 668 F.Supp.3d 486, 497 (E.D. La. 2023) (quoting *Nelton v. Cenac Towing Co., LLC,* No. CIV.A. 10-373, 2010 WL 4116851, at \*2 (E.D. La. Oct. 19, 2010)).

Plaintiff cites to *Gautreaux* to support her case that EPS is at least 1% at fault due to their failure to train. In *Gautreaux*, the plaintiff was hired as a relief captain and claimed that he was not trained properly by the defendant for the use and operation of an electric towing winch and its manual crank handle. 107 F.3d. at 331. After a two-day trial, the jury returned a verdict in favor of Gautreaux on his Jones Act negligence claim for failure to train. *Id*. Defendant appealed the judgment based on allegedly incorrect jury instructions regarding the training of Jones Act employees. *Id.* at 334. The Fifth Circuit ultimately affirmed the instruction stating that a Jones Act employer is obligated to train all its employees. *Id*.

In *Trico Marine Assets v. Diamond B Marine Servs.*, 332 F.3d 779 (5th Cir. 2003), the captain of the vessel had no specialized training on how to use the ship's radar and subsequently, collided with another vessel. Diamond B, the owner of the vessel, was held to be vicariously liable given the captain's lack of proper navigation and training. *Id*. at 796. The Fifth Circuit found that

"Diamond B also sent [the captain] out without a lookout and with a radar system that [the captain] had no training in how to use. Diamond B claims that [the captain] had sufficient hands-on experience in using radar, but the fact that [the captain] could not even tell which direction the CANE RIVER was traveling on radar indicates otherwise. In short, the facts found in this case go far beyond mere navigational errors." *Id*. at 790.

Both cases are like the facts in this case in that the accident happened aboard a ship, but the result is not the same. The lack of training that occurred in both prior cases is substantially different than the alleged lack of training here. Hebert argues that "EPS did not provide any guidance to Ms. Hebert about what she should do when she is on her own time[26]" and seemingly argues that EPS is at fault for not instructing Plaintiff how to approach an emergency when getting out of the shower. The Court agrees with EPS that specialized training regarding how to step out of a shower is not a requirement of being a medic on board a vessel, especially since Plaintiff was a highly qualified medic with many years of experience offshore.

Further, specialized training on how to step out of a shower and how to navigate a ship's radar to detect other ships around it or how to appropriately use ship equipment are significantly distinct scenarios. Plaintiff testified that she felt safe aboard the ship and that she was adequately "prepared and trained" to be a paramedic offshore.[27] A majority of Plaintiff's career was carried out offshore. Thus, it was not negligent or inapt for EPS to assume Plaintiff knew how to perform routine tasks like stepping out of the shower. An employer is not an insurer of its employee's safety and the fact that an accident occurred while performing a routine tasks does not amount to a showing of negligence for failure to train on behalf of the employer with no other additional evidence.

---

[26] [Doc. No.52, p. 7].
[27] [Doc. No. 39-3, p. 29].

Moreover, Plaintiff did not and cannot show any negligence regarding defects in the shower. Plaintiff admits that she was not rushed when she stepped out of the shower, nothing inside the shower was the proximate cause of rolling her ankle, there was no water on the bathroom floor, and in fact, she failed to lay a towel down outside of the shower. Additionally, after the incident, Plaintiff remained in the infirmary, continued to use the same shower, and recommenced her duties as a medic aboard the vessel.

Because EPS has met its burden of showing that there is no genuine issue of material fact concerning its own negligence, its Motion for Summary Judgment is **GRANTED**.

### c.  Hebert's Fault Under the Sudden Emergency Doctrine

Plaintiff argues that she bears no fault under the sudden emergency doctrine. Both Defendants refute this argument due to a genuine issue of material fact as to whether the sudden doctrine would apply under the facts. The sudden emergency doctrine is as follows:

> One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.

*Martin v. City of New Orleans*, 678 F.2d 1321, 1325 (5th Cir. 1982). Plaintiff cites to several cases rendered over fifty years ago that entail perilous situations involving automobile accidents. In *Car & Gen. Ins. Corp. v. Keal Driveway Co*., 132 F.2d 834 (5th Cir. 1943), the injured subrogor, was faced with a split-second decision when a car that was ten to twenty feet in front of him swerved into his lane going fifty miles per hour. *Id.* at 835. The Fifth Circuit held the subrogor not liable because "one placed in a position of sudden emergency or peril by the negligence of another, and not by his own negligence, is

not held to the same degree of care and prudence as one who has time for thought and reflection." *Id.* at 836.

In *Thibodeaux v. GEICO Advantage Insurance Company*, there was a two-car accident where Plaintiffs alleged that Hinkle's vehicle caused a violent collision due to his negligence. The defendants asserted that the cause of the accident was unanticipated brake failure in Hinkle's vehicle and argued that the sudden emergency doctrine should rebut the presumption of liability. No. CV 16-158, 2018 WL 5839386 at *1 (M.D. La. Nov. 7, 2018). In arriving at its holding, the United States District Court for the Middle District of Louisiana analyzed several cases that evaluated the applicability of the sudden emergency doctrine at the summary judgment stage. *Id.* In *Iglinsky v. Player*, the court cited favorably to the following language from the Louisiana state court case *Manno v. Gutierrez*:

> We note first that the application of the sudden emergency doctrine requires factual determinations concerning whether the driver was confronted with imminent peril and whether there was sufficient time to consider and weigh the circumstances in order to take action to avoid an impending danger. While we cannot say that it would never be possible to apply the doctrine on a motion for summary judgment ... by the nature of the sudden emergency doctrine, it would seem rarely appropriate on a motion for summary judgment.

No. CIV.A. 08-650, 2010 WL 4905984, at *6 (M.D. La. Nov. 24, 2010) (citing *Manno*, 934 So. 2d 112, 118 (La. App. 1 Cir. 2006)). Although the facts are dissimilar to this case, the court noted that a reasonable jury could conclude that the driver of the automobile was aware of a brake issue prior to the accident or, alternatively, the other driver's negligence caused the brake failure because of the accident.

Similarly, the Court presently finds that there are genuine issues of material fact regarding whether the sudden emergency doctrine applies to the case at hand. In her Motion, Plaintiff seemingly states that the sudden emergency doctrine applies since Hebert was placed in peril by

the negligence of another because she had inadequate time for thought and reflection. This is conflicting in view of the fact that Hebert stated that she was not rushed when she stepped out of the shower and rolled her ankle.[28] As pointed out in Hornbeck's Opposition, Hebert's testimony conflicts as to the facts leading up to the assumed emergency. In one part of her Motion, Hebert testifies that a "green worker" was "hectically pounding on the locked door"[29], and in another part, she states that somebody was "incessantly rattling the door handle to the point where [she] thought they were going to break in."[30]

However, despite testifying that Plaintiff was not rushed, she stated that after her incident, "she acted reasonably in rushing out of the shower to address the issue"[31] and was "much more careful and . . . decided if [she] was in the shower again and somebody was rattling the door, [she] was not going to do what [she] did."[32] So long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the Court must deny the motion. *Rogers v. Averitt Express, Inc.*, No. CV 15-706-JWD-RLB, 2017 WL 5569129, at *3 (M.D. La. Jan. 4, 2017) (citing *International Shortstop, Inc.*, *v. Rally's Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991)).

Based on review and looking at the evidence in the light most favorable to the Defendants, this Court cannot grant summary judgment for the Plaintiff, as there are still genuine issues of material fact as to what occurred and whether the sudden emergency doctrine applies to the situation.

Thus, Hebert's Motion for Summary Judgment is **DENIED.**

---

[28] [Doc. No. 39-3, p. 45].
[29] [Doc. No. 27-1, p.2].
[30] [Doc. No. 27-5 p. 5].
[31] [Doc. No. 27-1, p. 11].
[32] [Doc. No. 39-3, p. 52].

### III.     CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUGED, AND DECREED** that EPS' Cross-Motion for Summary [Doc. No. 39] Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Hebert's Motion for Summary Judgment [Doc. No. 27] is **DENIED**.

MONROE, LOUISIANA, this 14th day of June 2024.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE