UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RHONDA C HEBERT** | **CASE NO. 6:23-CV-00231** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **EXPEDITORS & PRODUCTION SERVICES CO INC ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 55] filed by Defendant, Hornbeck Offshore Services, LLC ("Hornbeck" or "Defendant"). Plaintiff, Rhonda Hebert ("Hebert" or "Plaintiff"), did not file an Opposition. Hornbeck filed a Response [Doc. No. 62].

For the reasons set forth herein, the Motion for Summary Judgment filed by Defendant is **GRANTED**.

### I.  FACTS AND PROCEDURAL BACKGROUND

This case arises from an incident on or around February 22, 2023, where Plaintiff allegedly sustained personal injuries while employed as a medic aboard *M/V HOS Warland* ("the vessel"), which was owned and operated by Hornbeck.[1]

Plaintiff's career began around 1992 when she was hired to be an ambulance driver after completing EMT basic training.[2] Plaintiff eventually went to work as a classroom instructor for Occupational Safety Training and then as a paramedic on land during the BP oil spill until she was laid off in February 2011.[3] After being laid off, Plaintiff was hired to work three hitches as a

---

[1] [Doc. No. 55-3, p. 115].
[2] [*Id.* at p. 44].
[3] [*Id.* at p. 77].

1

paramedic aboard a semi-submersible drill ship.[4] Plaintiff's other jobs include working as an HSE trainer where she taught OSHA maritime courses and as an offshore medic on ships for Pharma-Safe Industrial Services.[5] Plaintiff was employed by EPS Medical Solutions, LLC ("EPS") for a total of eight months with three hitches on the vessel.[6] Plaintiff began working on the vessel on or about January 16, 2022[7] after being hired by Frank Stoltz ("Stoltz"), EPS's hiring manager.[8] Initially, however, Plaintiff was employed as a COVID tech to do land based COVID testing.[9] Plaintiff testified that Hornbeck advised her on how to "walk around the vessel, be safe, look out for hazards, [and] general safety training" and that she considered the vessel to be a safe environment.[10]

At approximately 5:30 a.m. on February 23, 2022, Plaintiff was in the shower with the exterior door to the infirmary locked.[11] Somebody was "incessantly" rattling the door handle, so Plaintiff assumed someone had gotten hurt and needed her services.[12] When she stepped out of the shower, her ankle rolled and she fell, hitting her shin on the toilet.[13] Plaintiff testified that she grabbed the towel rack and it fell apart on her; however, she had no expectation that the towel rack was meant to be a handlebar.[14] Plaintiff testified that she was not rushing to get out of the shower.[15] Plaintiff stated that there was no water on the floor and agreed that "there was nothing on the floor that caused [her] ankle to roll."[16] Plaintiff failed to report the incident to Hornbeck and continued

---

[4] [*Id*. at p. 82].
[5] [*Id*. at p. 88].
[6] [*Id*. at p. 115].
[7] [*Id*. at p. 128].
[8] [*Id*. at p. 110].
[9] [*Id*. at p. 122].
[10] [*Id*. at p. 125].
[11] [*Id*. at p. 162].
[12] [*Id*.]
[13] [*Id*. at p. 163].
[14] [*Id*. at ps. 163, 171].
[15] [*Id*. at p. 169].
[16] [*Id*.]

to use the infirmary for the duration of her hitch. [17] Despite never asking to relocate, Plaintiff declared that "[she] was just much more careful and [she] decided that if [she] was in the shower again and somebody was rattling the door, [she] was not going to do what [she] did."[18] Hornbeck offered the declaration of Timothy Greeson ("Greeson"), a registered professional engineer and naval architect, that stated that "the design and construction of the infirmary and infirmary accommodations for the HOS WARLAND, including the shower and washroom area, fully comply with all applicable United States Coast Guard (USCG) regulations and industry standards."[19]

On February 22, 2023, Plaintiff filed this suit in federal court against Hornbeck, as vessel operator, asserting claims for unseaworthiness and general maritime negligence.[20] On March 25, 2024, Plaintiff filed a motion for summary judgment asking the Court to find that she was not at fault and that EPS, a previous defendant in this matter, was at least 1% at fault.[21] This Motion was denied.[22] EPS filed an Opposition and Cross-Motion for Summary Judgment urging the Court to dismiss Plaintiff's cause of action against EPS for negligence under the Jones Act, which was granted.[23] On May 13, 2024, Hornbeck filed the instant Motion for Summary Judgment asserting that Plaintiff did not and cannot identify any defects in the vessel or negligence by Hornbeck which caused or contributed to her rolling her ankle.[24] Further, Hornbeck argues that Plaintiff failed to

---

[17] [*Id.*]
[18] [*Id.* at p. 178].
[19] [Doc. No. 55-6, p. 2].
[20] [Doc. No. 1].
[21] [Doc. No. 27].
[22] [Doc. No. 67].
[23] [Doc. Nos. 39-1, 68].
[24] [Doc. No. 55-1, p. 8].

3

identify any applicable regulations or industry standards with which the vessel did not comply.[25] Plaintiff has not filed a Response. Hornbeck filed supplemental response.[26]

The issues have been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### a. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

---

[25] [*Id.*]
[26] [Doc. No. 64].

4

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### b. Unseaworthiness of Hornbeck

Hornbeck argues that Plaintiff "must show (1) a component or condition in the shower or infirmary washroom created or controlled by Hornbeck as vessel owner made the shower not reasonably fit for its intended purpose and (2) that the component or condition played a substantial part in bringing about or actually causing her injury."[27] Plaintiff offers no rebuttal.

---

[27] [Doc. No. 55-1, p. 14].

The duty of unseaworthiness is an absolute and non-delegable one which "the owner of a vessel owes to the members of the crew who man her." *United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki,* 358 U.S. 613, 616 (1959). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has [(sic)] failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). Unseaworthiness exists only if a piece of equipment or an appurtenance is not reasonably fit for its intended use. *Foster v. Destin Trading Corp.,* 700 So.2d 199, 210 (La. 5/30/97). Moreover, the general maritime law only requires a shipowner to provide a vessel that is suitable for its intended use, not the newest or best equipment. *Little v. Green*, 428 F.2d 1061 (5th Cir. 1970).

To succeed on an unseaworthiness claim, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy. *Jackson,* 245 F.3d 525 at 527 (citing *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir. 1980)). The causation standard for unseaworthiness is more demanding than for a Jones Act negligence claim and requires proof of proximate cause. *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 208-09 (5th Cir. 2019). The plaintiff must provide proof "that the unseaworthy condition played a substantial part in bringing about or actually causing [an] injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Luwisch v. Am. Marine Corp.,* 956 F.3d 320, 326 (5th Cir. 2020) (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1354 (5th Cir. 1988)).

Hornbeck relies on a factually similar case, *Douglas v. Chem Carriers Towing, LLC*, 409 F.Supp.3d 570 (E.D. La. Aug. 23, 2019), to support its argument. Although not precedent, the case is persuasive to this Court. In *Douglas*, the plaintiff filed a complaint against the owner of the

6

vessel after he slipped and fell when exiting the shower. *Douglas*, 409 F.Supp.3d 570 at 573. Specifically, the plaintiff's right foot caught on the shower's threshold as he was stepping over it. *Id*. The plaintiff alleged that the shower was unsafe in its design; therefore, it was not reasonably fit and safe for the purposes for which it was to be used. *Id.* at 574. The Eastern District Court of Louisiana summarily dismissed the plaintiff's unseaworthiness claim because the plaintiff offered no support showing that there was a genuine issue of material fact regarding the shower's safety. *Id*. at 573. The court noted in its opinion that the plaintiff did not identify any applicable regulations or industry standards for which the vessel failed to adhere. *Id.* at 576-77. The court considered an expert's opinion who determined that the shower was reasonably safe. *Id.* The court concluded that the "the plaintiff's lay testimony [did] not raise a triable issue that the shower [was] hazardous." *Id.*

Here, Plaintiff asserts, unlike the plaintiff in *Douglas*, that she considered the vessel to be a safe environment. Plaintiff did not identify, much less prove, any issues or defects with the shower which caused her to roll her ankle, nor did she identify anything on the floor or around the outside of the shower that caused her to roll her ankle.

> Q: So, is it – is it – did anything inside the shower cause you to fall?
> A: Not to my recollection.[28]
>
> * * *
>
> Q: Okay. So nothing on the floor of that shower contributed to your fall?
> A: No, sir. Because I picked my left foot – my left leg up.[29]

In fact, Plaintiff admitted that she failed to put anything on the floor, like a towel, before exiting the shower. Plaintiff acknowledged that a handlebar was properly installed inside of the

---

[28] [Doc. No. 55-3, p. 170]
[29] [*Id.* at 182].

7

shower. However, Plaintiff seemingly suggests that the towel rack on the outside of the shower was not in proper condition because it fell apart after she used it to steady herself. Yet, Plaintiff subsequently testified that she had no expectation that the towel rack was something she could use as a handlebar, and instead, she grabbed it out of pure reaction.

The plaintiff in *Douglas*, at the least, identified a possible cause that contributed to his fall, i.e., the shower threshold height whereas here, Plaintiff cannot definitively identify one cause contributing to her fall. Further, like in *Douglas*, Greeson, a registered professional engineer and naval architect, verified that the accommodations aboard the vessel complied with applicable regulations and industry standards and were thus reasonably fit for the intended purpose.

Like the court in *Douglas*, this Court finds that Plaintiff has not established a genuine issue of material fact with regard to Hornbeck's alleged unseaworthiness. Therefore, Hornbeck's Motion for Summary Judgment on this claim is **GRANTED.**

    **c. Negligence of Hornbeck**

Hornbeck further argues that to the extent Plaintiff alleges negligence of Hornbeck, such claims are governed by general maritime law because Hornbeck was not the employer of Plaintiff. Thus, Hornbeck argues that because Plaintiff cannot prove negligence, her claim should be summarily dismissed.

"'[N]egligence is an actionable wrong under general maritime law,' and the elements of that tort are 'essentially the same as land-based negligence under the common law.'" *In re Great Lakes Dredge & Dock Co*., 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candies, L.L.C.,* 431 F.3d 840, 842 (5th Cir. 2005)). Thus, a party asserting negligence must show the following to succeed: (1) duty; (2) breach of duty; (3) proximate cause; and (4) actual damage. *Canal Barge Co., Inc. v. Torco Oil Co*., 220 F.3d 370 (5th Cir. 2000). "Under

the negligence concept, there is only a duty to use due care, i.e., reasonable prudence, to select and keep in order reasonably suitable appliances. Defects which would not have been known to a reasonably prudent person at the outset, or arose after use and which a reasonably prudent person ought not to have discovered would impose no liability." *Vickers v. Tumey*, 290 F.2d 426, 431 (5th Cir. 1961).

In this case, there is no evidence Hornbeck breached its duty or caused Plaintiff's incident. For the reasons described above, Plaintiff failed to produce any identifiable evidence regarding Hornbeck's alleged breach of duty or that a defect on the vessel or in the shower caused or contributed to Plaintiff's injury. Plaintiff admits that she considered the vessel to be a safe environment, she was not rushed when she stepped out of the shower, nothing inside the shower was the proximate cause of rolling her ankle, there was no water on the bathroom floor, a towel rack is not intended to be a handlebar, and she failed to lay a towel down outside of the shower. Additionally, after the incident, Plaintiff remained in the infirmary, continued to use the same shower, and recommenced her duties as a medic aboard the vessel. Further, it is uncontested that the vessel complied with all applicable Coast Guard regulations and industry standards.

Because Hornbeck has met its burden of showing that there is no genuine issue of material fact concerning its own negligence, its Motion for Summary Judgment is **GRANTED.**

### III.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUGED, AND DECREED** that Hornbeck's Motion for Summary Judgment [Doc. No. 55] is **GRANTED**, and Plaintiff's claims against them are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 28th day of June 2024

.

                                                                               TERRY A. DOUGHTY  
                                                        UNITED STATES DISTRICT JUDGE